**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **APRIL REED,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 21-00528-KD-N** |
| ) | |
| **MOBILE COUNTY BOARD OF** ) | |
| **SCHOOL COMMISSIONERS, et al.,** ) | |
| ) | |
|     **Defendants.** ) | |

**ORDER**

This action is before the Court on Defendant Mobile County Board of School Commissioner's Motion for Summary Judgment (Doc. 42); Plaintiff April Reed's Response (Doc. 47); Defendant's Reply (Doc. 50); Plaintiff's Supplemental Response (Doc. 53); and Defendant's Supplemental Reply (Doc. 54).

**I.     Factual Background[1]**

Plaintiff April Reed ("Reed"), a black female, was employed by Defendant Mobile County Board of School Commissioners ("School Board"), the governing body of the Mobile County Public School Systems, from 2005 to 2019. Reed began her employment with the School Board as an elementary school teacher.[2] As Reed's career progressed, she became a school counselor. From 2017 to 2019, Reed was a counselor at Blount High School – a Title I school within the Mobile County Public School system.

---

[1] The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

[2] Reed's first degree was in elementary education. She later went back to school and received a "degree in counseling, school counseling." (Doc. 41-12 at 10).

1

Reed's minor son attended Old Shell Road magnet school, a school within the Mobile County Public School System, as a first grade student during the 2017-2018 school year. Towards the beginning of October 2017, Reed's son's teacher, Ms. Jones, found a folder next to Reed's son that contained a copy of the "Wonders Progress Monitoring". (Doc. 41-1 at 6). The folder stuck out to Ms. Jones because her students' reading grades come, in part, from performance on Wonders Progress Monitoring assessments. Ms. Jones did not make the folder for Reed's son. Id.

On November 2, 2017, a conference between Reed, Ms. Jones, and the Principal of Old Shell Magnet School took place. (Doc. 41-1 at 6). At the conference, Reed was shown and questioned about the folder containing the Wonders Progress Monitoring paperwork. Reed denied knowledge of the folder. (Doc. 41-1 at 6; Doc. 46-10 at 2). Neither Reed nor her son were disciplined in any fashion following the November 2017 conference.

On November 3, 2017, Ms. Jones administered a Wonders Reading Assessment to her students. Prior to giving directions, Reed's son successfully answered some of the questions. Ms. Jones asked Reed's son about this and he told her that his mom had the assessment at home in a folder. (Doc. 41-1 at 6). Reed's son only missed one question on the assessment.

On February 27, 2018, Ms. Jones was administering another Wonders Reading Assessment. As students were writing their names, Reed's son "excitedly came" to Ms. Jones and told her that his mom read the assessment with him the night before. Reed's son only missed one question on the assessment. However, a different testing metric comparing student's improvement in reading showed negative growth for Reed's son from Fall 2017 to Spring 2018. Id. Ms. Jones reported this to her superiors.

The Superintendent of Human Resources, Ms. Shenesey, held a phone conference with

Reed on or about March 8, 2018, to discuss the allegations regarding improper assistance to her son. (Doc. 46-14). Ms. Shenesey "stated the current suspicion by [Ms. Jones and Mr. Hack, executive manager of human resources at the Mobile County Public School System,] is the result of statements made by her [son to Ms. Jones] that he has already read the stories with [Reed] and [Reed] asked him the same questions." (Doc. 46-14). Further, Ms. Shenesey told Reed that "if this situation comes up again," then Reed will most likely have a conference with Mr. Hack and the Superintendent of Academic Affairs. Id. Reed denied providing improper assistance to her son. (Doc. 46-14). No disciplinary action was taken against Reed or her son.

> Reed avers that,
>
> during that telephone call I told Ms. Shenesey that it was my opinion that I would not be receiving this type of phone call had I not been black. I told her that the school system would not approach a white parent in this fashion without an initial conference with either the teacher or principal, during which such an allegation would have been discussed. Shenesey warned me that if any such allegation is made again it would go in my personnel file as a disciplinary issue.

(Doc. 47-1 at 4).

Reed's son continued his education at Old Shell Road magnet school during the 2018-2019 school year with a new teacher. He completed the second grade without incident. Neither Reed nor her son had any issues. (Doc. 41-12 at 24).

On or about April 22, 2019, a non-profit organization, Voices Organized in Creating Equality, wrote a letter to Ms. Shenesey on Reed's behalf demanding a conference regarding the cheating allegations from over a year prior. (Doc. 46-5). The letter states that "Reed ha[s] desire[s] to gain clarity on the rationale for those accusations and has been deprived a forum and venue to have those concerns addressed." (Doc. 46-5). Moreover, the letter requests "a meeting to further address the issues brought on by those accusations." (Doc. 46-5). The letter does *not* reference race or discrimination. (Doc. 46-5).

On or about April 26, 2019, Reed was informed by the Principal of Blount High School, Mr. Jerome Woods, that Blount could not afford her in its Title I budget for the 2019-2020 school year and that she might be mandatorily transferred. (Doc. 46-6 at 1). On May 22, 2019, notice of Reed's mandatory transfer was issued. (Doc. 41-2 at 2). Reed was transferred to an elementary school teacher position – a position for which she was qualified and certified. The mandatory transfer did not subject Reed to a diminution in compensation. On May 29, 2019, Reed filed a notice of appeal of the mandatory transfer. Id.

On June 17, 2019, Reed filed a complaint with the U.S. Department of Education, Office of Civil Rights. (Doc. 41-5 at 2). On June 18, 2019, attorney Moshae Donald sent a notice of appearance, on behalf of Reed, to the Superintendent of Mobile County Public Schools requesting relevant information. (Doc. 41-3). On July 3, 2019, the Office of Civil Rights notified the Superintendent of Reed's complaint. More specifically, the Office of Civil Rights explained that it would not be taking any action on Reed's behalf but instead referring the complaint to the Equal Employment Opportunity Commission ("EEOC").[3] (Doc. 41-5 at 2).

---

[3] In relevant part, the letter from the Office of Civil Rights to the School Board (Doc. 41-5) provides the following:

> OCR is responsible for enforcing Title VI of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000d-d6, and its implementing regulation, 34 C.F.R. Part 100, which prohibit discrimination on the basis of race, color or national origin by recipients of Federal financial assistance (FFA).
>
> OCR's authority to investigate Title VI claims of discrimination against employees is limited to instances where a primary objective of the federal funds received by the institution is to provide employment or where the alleged discrimination tends to deny equality of opportunity to beneficiaries (i.e., students) on the basis of race, color, or national origin. OCR has determined that these circumstances do not apply to your allegation. Another federal agency, the U.S. Equal Employment Opportunity Commission (EEOC), may have the authority to investigate your allegations of race, national origin, or sex under Title VII of the Civil Rights Act of 1964 (Title VII), which prohibits discrimination in employment on the bases of race, color, national origin, sex, and religion.
>
> Therefore, we are referring this complaint to the EEOC for further action under Title VII.

On August 14, 2019, the EEOC provided notice to the Superintendent of Reed's claim against the board. (Doc. 42 at 4; Doc. 47 at 5).[4]

On August 8, 2019, the School Board heard Reed's appeal. (Doc. 41-7 at 2). The School Board voted in favor of approving Reed's mandatory transfer. (Doc. 41-7 at 2). Notice of the School Board's decision was mailed to Reed on August 9, 2019. (Doc. 41-7 at 2). Blount did not hire a new counselor in place of Reed for the 2019-2020 school year.

Subsequently, the School Board directed Human Resources to help Reed obtain counselor interviews. (Doc. 46-1; Doc. 46-19). Reed applied for a counselor position with Citronelle High School. She did not receive a job offer. (Doc. 41-12 at 20-21). Additionally, Reed declined to interview for a vacant counselor position at Williamson High School. Id. Further, Reed testified that there were vacant counselor positions in elementary and middle school during the Spring and Summer of 2019 that she did not apply for. Id. at 38. Reed continued her employment with the School Board as a teacher to start the 2019-2020 school year.

On November 18, 2019, Reed filed her two-week notice and resigned from her position as an elementary school teacher. (Doc. 41-8 at 2). In July 2020, Lucius, a black female, was hired as a counselor at Blount High School. (Doc. 41-16 at 7; Doc. 42 at 5; Doc. 47 at 8).

## II.    Standard of Review on Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c) provides as follows:

*(c) Procedures*
*(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely

---

[4] An administrative error caused notice of the perfected EEOC charge to be delayed from December 2019 to May 2021. (Doc. 41-9 at 2). Notice of the EEOC's decision has not been provided to the Court.

5

>disputed must support the assertion by:
>
>**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
>***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
>***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
>***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

**III.     Analyses**

    **a.  Race Discrimination under Title VII and § 1981**

Reed asserts claims for discrimination under both Title VII (Count 1) and § 1981 (Count III) in the complaint. (Doc. 1 at 5). However, Reed failed to respond to or address the School Board's arguments raised in its motion for summary judgment concerning discrimination.[5] And, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Blue Cross & Blue Shield v. Weitz, 913 F.2d 1544, 1550 (11th Cir.1990). Rather, the onus is upon the parties to formulate arguments; *grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned*. Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir.1994)." Resol. Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (citations omitted) (emphasis added); see, e.g., Clark v. City of Atlanta, Ga., 544 F. App'x 848, 855 (11th Cir. 2013) ("district court ... properly treated as abandoned ... claims, which were alleged in the complaint, but not addressed in opposition to the motion for summary judgment"). Consequently, Reed's claims for discrimination (Counts I & III) are deemed abandoned and fail as a matter of law.

    **b.  Retaliation under Title VII and § 1981**

Reed brings claims for retaliation under both Title VII (Count II) and § 1981 (Count IV).

---

[5] In making out a *prima facie* claim of discrimination under Title VII or § 1981, a plaintiff must prove that the defendant treated a different class more favorably. See Fuller v. Edwin B. Stimpson Co. Inc., 598 F. App'x 652, 653 (11th Cir. 2015) ( "Under *McDonnell Douglas,* the plaintiff must initially establish a prima facie case, which generally consists of the following: (1) the plaintiff was a member of a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action; and (4) *he was treated less favorably than similarly situated individuals outside his protected class*.") (internal citations omitted) (emphasis added). Reed was replaced as a counselor at Blount by a member of the same class (a black female), so she would not be able to satisfy the fourth element.

"Title VII and § 1981 prohibit employers from taking adverse actions against employees in retaliation for their opposition to statutorily prohibited racial discrimination. See 42 U.S.C. § 2000e–3(a); CBOCS West, Inc. v. Humphries, 553 U.S. 442, 446, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008)." Rose v. Wal-Mart Stores E., Inc., 631 F. App'x 796, 798 (11th Cir. 2015). "Title VII and § 1981 have the same requirements of proof and use the same analytical framework." Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1256-60 (11th Cir. 2012) (analyzing retaliation pursuant to Title VII and § 1981 under the same analytical framework) (internal quotations and citations omitted); see also Worley v. City of Lilburn, 408 F. App'x 248, 250 (11th Cir. 2011) ("The elements required to establish retaliation claims under § 1981 are the same as those required for Title VII claims."). A plaintiff may establish a claim of retaliation "by direct or circumstantial evidence, and when a plaintiff only produces circumstantial evidence, a court may use the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010)." Rose, 631 F. App'x at 798 (11th Cir. 2015).

      Reed has not offered any direct evidence of retaliation. Accordingly, the burden-shifting framework established in McDonnell Douglas applies. "Pursuant to that framework, [Reed] first must establish a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected conduct—that is, conduct protected by Title VII; (2) she suffered an adverse action; and (3) there is some causal relationship between the two events." Tolar v. Bradley Arant Boult Commings, LLP, 997 F.3d 1280, 1289 (11th Cir. 2021) (internal quotations omitted). "The burden then shifts to the [School Board] to articulate a legitimate, nonretaliatory reason for the adverse action. Assuming the [School Board's] burden is met, the burden shifts back to [Reed] to establish that the reason offered by the [School Board] was not the real basis for the decision, but

a pretext for retaliation." Id. (internal citations and quotations omitted).

The first step in the Court's analyses is determining whether Reed engaged in protected conduct. "Under Title VII, an employee has engaged in protected activity if she has: (1) opposed an unlawful employment practice, or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII's retaliation provision." Smith v. City of Fort Pierce, Fla., 565 Fed.Appx. 774, 776–77 (11th Cir. 2014) (quoting EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000) (quoting 42 U.S.C. § 2000e–3(a))).

Reed's initial brief in response to summary judgment concerning whether she engaged in a protected activity is unhelpful. (Doc. 47 at 9-10).[6] In her supplemental brief, Reed asserts that the protected activity occurred when Reed informally complained that "Defendant discriminated against her because of her race by treating cheating allegations lodged against her and her son as a 'human resources' issue rather than as a 'parent-student-teacher.'" (Doc. 53 at 2).

The School Board argues that Reed did not engage in a protected activity because she did not "complain[] about an unlawful employment practice prohibited by Title VII." (Doc. 42 at 12-13). Additionally, the School Board argues that Reed's complaint about the accusation against her son being racially biased is not a protected activity. Id. Last, the School Board asserts that "[i]t is not enough for a plaintiff to show that she opposed garden-variety unfairness, harsh treatment in the workplace, or behavior that is prohibited under other laws; she is only protected for retaliation if she opposed or complained about an activity specifically prohibited by Title VII [or §1981] and an allegation that Reed complained about racial discrimination toward her son, a

---

[6] As stated by the School Board, Reed testified at her deposition that the protected activity was her "initial conversation with Shenesey and the complaints that [she] filed." (Doc. 41-12 at 21).

9

student at a Mobile County Public School, by his teacher, is not sufficient because this type of discrimination is not discrimination in employment, which is made unlawful by Title VII and §1981." (Doc. 50 at 5) (citing Hawkins v. Holy Family Cristo Rey Catholic High Sch. Case 2018 WL 632645, at *4 (N.D. Ala. Dec. 4, 2018); Holt v. Lewis, 955 F. Supp. 1385, 1387-88 (N.D. Ala. 1995) aff'd, 109 F. 3d 771 (11th Cir. 1997) (unpublished); Cox v. Fulton Cty. Sch. Dist. at *19-20.).

The Court agrees with the School Board that Reed's complaints about the treatment of her son is not protected activity for purposes of retaliation under Title VII or § 1981. See Bowens v. Escambia Cnty. Bd. of Educ., 2022 WL 1005062, at *7 (S.D. Ala. Apr. 4, 2022), aff'd, No. 22-11560, 2023 WL 4145424 (11th Cir. June 23, 2023) ("Plaintiff also says she engaged in protected conduct when she complained that her son (a student in the Escambia County school system) had been the target of racial discrimination. Plaintiff's complaints about her son, however, were not made in opposition to an employment practice made unlawful under Title VII or to discrimination in the making and enforcement of contracts in violation of section 1981.").

Moreover, the April 2019 letter from her advocate re-urging a discussion about the 2018 cheating allegation was not protected activity. The letter focuses on the allegations of cheating against her son and Reed and alleges a violation of Reed's due process rights. However, the letter in no way alleges race discrimination or any other unlawful employment practice under Title VII.

The only possible protected activity[7] is Reed's informal assertion to Shenesey in March 2018 that she was being treated differently than a white parent would be treated. The most

---

[7] Reed did not file a complaint with the EEOC or Office of Civil Rights until *after* she was

favorable light that can be cast on this statement is that Reed asserted that a call from her employer's HR about the cheating allegation would not have been made had she been a white parent. Instead the white parent would have been contacted by the school principal and HR would not have been involved.

In <u>Weeks v. Harden Mfg. Corp.</u>, 291 F.3d 1307 (11th Cir. 2002), the Eleventh Circuit held in order to establish protected activity, "a plaintiff must show that she had a good faith, reasonable belief that the employer was engaged in unlawful employment practices" and that her "belief was *objectively* reasonable in light of the facts and record presented." <u>Id</u>. at 1311-1312 (emphasis in original).  Reed's belief that it is an unlawful employment practice to treat a <u>black teacher</u> differently than a <u>white parent</u> is not objectively reasonable. However, even if the Court could construe the complaint made to Shenesey in March of 2018 as protected activity, Reed fails to present sufficient evidence of a causal connection between the March 2018 complaint and her notice of transfer in April 2019.

To establish a causal connection between participation in a protected activity and adverse employment action, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." <u>Brungart v. BellSouth Telecomms., Inc</u>., 231 F.3d 791, 799 (11th Cir. 2000) (quotations omitted). To make this showing, a plaintiff must generally establish "that the decision maker was aware of the protected conduct at the time of the adverse employment action." <u>Id</u>. "[C]lose temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Id.*

---

mandatorily transferred. Thus, while this is protected activity, it came after the adverse action was taken.

The facts show that after Reed made her March 2018 complaint no adverse action was taken. In fact, Reed was renewed in her same position for the 2018-2019 school year. To the extent Reed is relying on the April 2019 letter to show temporal proximity, such reliance is misplaced. As previously discussed, the April 2019 letter is not protected activity. In sum, Reed fails to present sufficient circumstantial evidence that the transfer was in anyway related to an informal complaint made over a year before. Therefore, Reed's claims for retaliation (Counts II & IV) fail as a matter of law.

**IV.    Conclusion**

For the reasons set forth above, Defendant Mobile County Board of School Commissioner's Motion for Summary Judgment (Doc. 42) is **GRANTED**.

A Final Judgment consistent with terms of this Order shall be entered by separate document as required by Rule 58(a) of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the **2nd** day of **August 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**